**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
IOWA CENTRAL DIVISION**

| | |
|---|---|
| DANNY HOPPER,<br><br>　　　　PLAINTIFF,<br><br>vs.<br><br>GC SERVICES LIMITED PARTNERSHIP.,<br><br>　　　　DEFENDANT. | Civil Action No.<br><br>**COMPLAINT and DEMAND FOR JURY TRIAL** |

NOW COMES the Plaintiff, Danny Hopper ("Plaintiff" or "Hopper") by and through his attorney, L. Ashley Zubal, and for his Complaint against the Defendant, GC Services Limited Partnership (hereinafter "Defendant" or "GC Services"), alleges as follows:

### I.　　INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq, (hereinafter "FDCPA") and the Iowa Debt Collection Practices Act, § 537.7103, et seq, (hereinafter "IDCPA") which prohibit debt collectors from engaging in abusive, deceptive, and unfair collection practices.

### II.　　JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1337, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367. Venue in this District is proper in that the Defendant transacts business in Iowa and the conduct complained of occurred here.

### III.　　PARTIES

3. Plaintiff, Danny Hopper, is a natural person residing in Lisbon, Iowa.

4. Defendant, GC Services, is a business engaged in the collection of debts owed to another in the State of Iowa.

5. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3). Plaintiff is a "debtor" as that term is defined by Iowa Code § 537.7102(6).

6. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Iowa Code § 537.7102(5).

7. At some point in time, the Plaintiff incurred an alleged "debt" as that term is defined by 15 U.S.C. § 1692a(5) and Iowa Code § 537.7102(3), to US Department of Education, which was used for personal, family, or household use.

8. Sometime thereafter, the debt was sold, assigned, or otherwise transferred to the Defendant for collection.

9. Defendant is a collection agency that in the ordinary course of business, regularly, on behalf of itself or others, engages in debt collection.

## IV.   FACTUAL ALLEGATIONS

10. At some point in time the Plaintiff defaulted on his student loan payments.

11. At some point in time the account was transferred to the Defendant for collection.

12. The Defendant refused to negotiate a rehabilitation program with the Defendant. The Defendant would not accept payments by debit card alone and required the Plaintiff to open a checking account specifically for the rehabilitation program. The Defendant pushed the Plaintiff to open a checking account with Second Chance Checking and told him he had three days to open the account or garnishment of his wages would commence.

13. Sometime during September 2011, the Plaintiff received correspondence from the Defendant. Said correspondence advised the Plaintiff in part that as a result of defaulted student loans, National Student Loan Program (NSLP) would seek garnishment of the Plaintiff's wages. Said correspondence went on to state that the Plaintiff had a right to request documentation and a hearing.  At no point in time did the Defendant advise the Plaintiff of his right to consolidate his loans, whether by telephone or through correspondence.

14. The Plaintiff independently researched options to bring defaulted student loans into good standing and requested the Defendant work with him to consolidate his loan. The Defendant refused to consolidate the loan and told the Plaintiff that consolidation was not an option.

15. Shortly thereafter, the Plaintiff contacted Next Student Loan, an organization that aids borrowers in consolidating student loan debt. Next Student Loan worked with the US Department of Education on the Plaintiff's behalf to arrange for consolidation. On or about November 11, 2011, the Plaintiff consolidated his defaulted student loans into a newly consolidated loan. The original loan was thus paid off on November 11, 2011.

16. The Department of Education, through Direct Loans, forwarded correspondence to the Plaintiff dated November 15, 2011, detailing the terms of the consolidation and verifying the original loan payoff on November 11, 2011. The correspondence went on to itemize the Plaintiff's new payment schedule on the consolidated loan.

17. On or about November 18, 2011, the Defendant went forward with garnishment of the Plaintiff's wages notwithstanding the loan was now paid off. The Defendant garnished the Plaintiff's wages in the amount of $137.95. The Defendant's accounting department deposited the garnished funds on or about November 28, 2011.

18. The Plaintiff contacted his place of employment on November 18, 2011. His payroll informed him that GC Services had requested garnishment on two employees, one being the Plaintiff, and that garnishment was applied and the money remitted to GC Services on November 18, 2011.

19. The Plaintiff contacted the Defendant on or about November 18, 2011. The Plaintiff explained that he had consolidated his student loans and the consolidation was finalized on November 11, 2011. The Plaintiff explained that because the original loan was paid off, there was no remaining balance. The representative informed the Plaintiff that the garnishment was legal and would continue.

20. On or about November 21, 2011, the Plaintiff contacted the Department of Education. The Department of Education informed the Plaintiff that because the loan was consolidated and paid off the Defendant should not have garnished but that the Plaintiff would have to contact NSLP directly to inquire as they were handling his loan.

21. On November 21, 2011, the Plaintiff contacted NSLP to explain the circumstances surrounding the garnishment. Upon speaking with a representative, NSLP advised the Plaintiff that they would send an email to the Defendant immediately advising that garnishment must cease and that the initial garnishment was in error.

22. The Plaintiff contacted the Defendant again on November 21, 2011 to advise that NSLP would be sending an email requesting a cease garnishment. The Defendant located the account and advised the Plaintiff that they would send correspondence to the Plaintiff's employer requesting the garnishment cease.

23. On November 23, 2011 the Plaintiff contacted the Defendant by telephone and spoke with a representative. The Plaintiff provided the necessary information to locate his account and explained the circumstances surrounding the garnishment. The Plaintiff requested the Defendant return the garnished funds. The representative denied that GC Services dealt with garnishments and that execution of garnishment was handled by a different entity. The Plaintiff explained that he had documentation from his employer showing the Defendant garnished his pay and that the Defendant deposited the funds. The representative continued to deny that the Defendant garnished the Plaintiff's wages.

24. On November 24, 2011 the Plaintiff again contacted the Defendant and explained the circumstances surrounding the garnishment and explained that he was trying to get a straight answer from the Defendant and an explanation as to what happened. He further explained that he had documentation that the Defendant garnished and that he felt the Defendant needed to return the funds to him. The representative stated that they had taken down the information and requested the Plaintiff give them a few days to investigate his file and that someone from GC Services would contact the Plaintiff.

25. The Defendant never contacted the Plaintiff subsequent to the November 24, 2011 conversation.

26. Sometime during the first week of December 2011, the Plaintiff again contacted the Defendant and explained the circumstances surrounding the garnishment and stated that he had been told that the matter was being investigated and he had yet to receive a response. The Plaintiff spoke to a male representative of the Defendant. The representative expressed to the Plaintiff that they no longer had the Plaintiff's account, that it was sent back to NSLP and that if the funds were garnished that it was legal and that it was their money.

27. The Plaintiff continued to call the Defendant almost every other day and was either told that the Defendant no longer had the account and could therefore not look up any information or was told that the garnished funds were the Defendants and would

not be returned to the Plaintiff. On several occasions representatives yelled at the Plaintiff, were rude and talked down to him on the phone.

28. On December 12, 2011, the Plaintiff once again contacted the Defendant and spoke with Defendant's representative Summer. While Summer acknowledged that she could not pull up the file because it had been transferred back to NSLP, she agreed to take down the information provided by the Plaintiff and investigate the account. Summer advised the Plaintiff to call back on December 19, 2011 and ask to speak with Wilma.

29. On December 19, 2011, the Plaintiff contacted the Defendant and stated that he was advised to call and ask for Wilma with regard to his account. The Plaintiff was placed on hold to an excess of over thirty minutes without speaking to a representative or Wilma.

30. The Plaintiff, after exhausting all means or communication with the Defendant or attempting to cooperate in correcting the error that occurred, consulted the assistance of an attorney.

31. As a result of the above-referenced communications and actions of the Defendant, the Plaintiff has experienced the following damages including, but not limited to: embarrassment, humiliation, frustration, anger, stress, nervousness, loss of sleep, effect on job and work performance, and anxiety.

### V.  FIRST CLAIM FOR RELIEF: VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

32. The Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 31.

33. GC Services and its agents violated the FDCPA through the foregoing acts and omissions including, but not limited to:

   a. The Defendant violated 15 U.S.C. § 1692d(2) by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

   b. The Defendant violated 15 U.S.C. § 1692e(2)(a) through a misrepresentation of the character, amount or legal status of a debt.

  c. The Defendant violated 15 U.S.C. § 1692e(2)(b) through the misrepresentation of services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

  d. The Defendant violated 15 U.S.C. § 1692f(1) through the use of unfair or unconscionable means to collect or attempt to collect a debt and the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

34. The Plaintiff is entitled to statutory damages up to $1,000.00 for Defendant's violations of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A).

35. The Plaintiff is entitled to actual damages for Defendant's violations of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(1).

36. The Plaintiff is entitled to an award of the costs of this action and reasonable attorney fees for Defendant's violations of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(3).

## VI. SECOND CLAIM FOR RELIEF: VIOLATION OF THE IOWA DEBT COLLECTION PRACTICES ACT (IDCPA)

37. The Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 36.

38. GC Services and its agents violated the IDCPA through the foregoing acts and omissions including, but not limited to:

  a. The Defendant violated Iowa Code § 537.7103(1)(f) by violating 15 U.S.C. §§ 1692d(2); 1692e(2)(a); 1692e(2)(b); and 1692f(1);

  b. The Defendant violated Iowa Code § 537.7103(2) through conduct which was intended to oppress, harass or abuse the Plaintiff in connection with the collection of a debt;

  c. The Defendant violated Iowa Code § 537.7103(4)(e) through a misrepresentation that tends to create a false impression of the character, extent or amount of a debt;

  d. The Defendant violated Iowa Code § 537.7103(4)(i) through a misrepresentation which tends to create a false impression, about the

      status or true nature of, or services rendered by, the debt collector or the debt collector's business;

    e.  The Defendant violated Iowa Code § 537.7103(5)(d) through the collection of a charge or fee or expense unless the fee or expense is legally chargeable.

39. The Plaintiff is entitled to statutory damages ranging from $100.00 to $1,000.00 for Defendant's violations of the IDCPA pursuant to § 537.5201(1)(y).

40. The Plaintiff is entitled to actual damages for Defendant's violations of the IDCPA pursuant to § 537.5201(1)(y).

41. The Plaintiff is entitled to an award of the costs of this action and reasonable attorney fees for Defendant's violations of the IDCPA pursuant to § 537.5201(8).

**WHEREFORE,** the Plaintiff respectfully requests that judgment be entered against the Defendant, that the Plaintiff be awarded statutory damages, actual damages, the cost of this action along with reasonable attorney fees, and for such other relief as the Court deems appropriate in the circumstances.

## VII.   JURY DEMAND

The Plaintiff respectfully requests a trial by jury.

                                         Respectfully submitted,

                                          /s/ L. Ashley Zubal
                                       L. Ashley Zubal IS9998256
                                       Marks Law Firm, P.C.
                                       4225 University Avenue
                                       Des Moines, IA 50311
                                       (515) 276-7211
                                       (515) 276-6280
                                       ATTORNEY FOR PLAINTIFF